886 F.2d 247
 Marie CHALOUX; Nancy Morgan, and Clarence Paine,
individually and on behalf of all others similarly
situated, Plaintiffs-Appellants,
v.
Vaughn KILLEEN, in his official capacity as Sheriff of Ada
County, State of Idaho; Robert Aja, in his official
capacity as Sheriff of Gooding County, State of Idaho, and
on behalf of all other County Sheriffs of the State of
Idaho, similarly situated, Defendants-Appellees.
 No. 88-3563.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 10, 1989.
Decided Sept. 22, 1989.
 
 Howard A. Belodoff, Idaho Legal Aid Services, Inc., Boise, Idaho, for plaintiffs-appellants.
 Phillip Collaer, Deputy Pros. Atty., Boise, Idaho, for defendants-appellees.
 Appeal from the United States District Court for the District of Idaho.
 Before WRIGHT and ALARCON, Circuit Judges, and TEVRIZIAN*, District Judge.
 EUGENE A. WRIGHT, Circuit Judge:
 
 
 1
 The opinion herein filed on May 1, 1989, 873 F.2d 1274 (9th Cir.) has been withdrawn and is replaced by this disposition. Rehearing has been granted.
 
 
 2
 Several recipients of governmental benefits brought this action to challenge the constitutionality of Idaho's postjudgment garnishment procedures. Asserting constitutional violations arising from the seizure of their federally exempt benefits, they sued the county sheriffs in their official capacities for declaratory and injunctive relief. The district court held that appellants had failed to name the proper officials to defend the state statutes and dismissed the action. We reverse and remand.
 
 FACTUAL BACKGROUND
 
 3
 Marie Chaloux and Nancy Morgan maintain a joint bank account to which they deposit directly their social security disability checks. Similarly, Clarence Paine has an account into which the Railroad Retirement Board deposits his railroad retirement checks. Those governmental benefits, exempt by federal law from execution and garnishment, provide appellants with their sole source of income.[1]
 
 
 4
 In unrelated actions, creditors obtained default judgments against each appellant and initiated postjudgment garnishment procedures pursuant to Idaho's statutory scheme. See Idaho Code Secs. 8-507 to 8-523, 11-101 to 11-207 (1979). County court clerks issued writs of execution directing the sheriffs to satisfy the respective judgments from appellants' bank accounts. Id. Sec. 11-102. Complying with Idaho's procedures, the sheriffs served postjudgment writs of execution and notices of garnishment on the bank holding each account. Id. Sec. 31-2202(8).
 
 
 5
 Prior to the attachments, appellants were given no notice of the execution or garnishment. The sheriffs did not inform them of their right to claim exemptions under federal or state law or the procedures available for claiming them. Idaho law requires no such notice. Chaloux and Morgan succeeded eventually in claiming exemptions for funds from their social security benefits. Paine claimed no exemptions and his creditors obtained all funds in his account.
 
 PROCEDURAL BACKGROUND
 
 6
 In January 1984, Chaloux and Morgan sued to challenge the constitutionality of Idaho's postjudgment garnishment procedures. They filed a complaint on behalf of themselves and the class they sought to represent against E.C. Palmer, in his official capacity as sheriff of Ada County.[2] They later amended their complaint to join Paine's claim against Robert Aja, sued in his official capacity as sheriff of Gooding County.
 
 
 7
 Their complaint alleged that Idaho's statutory scheme of postjudgment execution and garnishment deprived them of property without due process. It also asserted that the challenged statutes violated the supremacy clause by permitting the seizure of governmental benefits exempt by federal law. Appellants sought declaratory and injunctive relief under 42 U.S.C. Sec. 1983 and 28 U.S.C. Secs. 2201-2202. They did not seek damages.
 
 
 8
 They also requested the court to certify a class action pursuant to Fed.R.Civ.P. 23. The class was to consist of all judgment debtors who are or may be subject to having their exempt property seized under Idaho law. Appellants later filed a formal class certification motion.
 
 
 9
 In May 1984, the district court, pursuant to a motion and stipulation of the parties, suspended the proceedings to give the parties an opportunity to negotiate a settlement. When that effort failed, the court resumed proceedings in September 1985.
 
 
 10
 Appellants moved for summary judgment and moved to join an additional plaintiff, Robert Stafford. They did not renew their previous motion for class certification. Killeen filed a cross-motion for summary judgment. The court granted summary judgment in favor of the county officials and dismissed the action. In light of its decision, it also denied the joinder of additional parties. It did not rule on appellants' motion for class certification, considering only those motions submitted after May 1984 ripe for determination.
 
 ANALYSIS
 
 11
 The court in its dismissal concluded that appellants had failed to name the proper official to defend the constitutionality of Idaho's postjudgment execution and garnishment statutes. We disagree and hold that the court should have proceeded with the action.
 
 
 12
 * The court relied on the principles of municipality liability as set forth in Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), as the basis for its dismissal. We find that reliance misplaced.
 
 
 13
 In Monell, the Court considered the liability of municipal officials, sued in their official capacities, in a suit where plaintiffs sought damages based on the municipality's "official policy" of forcing pregnant employees to take unpaid leaves of absence. Id. at 661-62, 98 S.Ct. at 2020-21. Concluding that municipalities and their officials were "persons" under Sec. 1983, the Court set a standard for determining municipal liability:
 
 
 14
 Local governing bodies, therefore, can be sued directly under Sec. 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.
 
 
 15
 Id. at 690, 98 S.Ct. at 2035 (emphasis added and footnote omitted). Because Monell unquestionably involved an official municipal policy as the moving force of the constitutional violations alleged, the Court found the city liable under Sec. 1983 for retrospective relief in the form of backpay. Id. at 661-62, 694-95, 98 S.Ct. at 2020-21, 2037-38.
 
 
 16
 In our case, the district court held that under Monell the plaintiffs could not prevail in an official-capacity suit against the county sheriffs. It recognized that they had sued the sheriffs only in their official capacities and that the counties were the real parties in interest. See Monell, 436 U.S. at 690 n. 55, 98 S.Ct. at 2035 n. 55 ("official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent"); see also Kentucky v. Graham, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985) ("official-capacity suit is, in all respects other than name, to be treated as a suit against the entity").
 
 
 17
 Then, relying on Monell, it concluded that the plaintiffs could not properly name the counties as defendants unless they could show that the constitutional violations were inflicted pursuant to an official county policy. Ruling that they had failed to establish such a policy, the court dismissed the action.
 
 
 18
 Monell does not apply here. Unlike Monell, this case presents solely a claim for prospective relief. Appellants sought only a declaration that the Idaho postjudgment garnishment procedures are unconstitutional and an injunction against the counties' enforcement of the challenged state statutes. We conclude that the Court did not intend to apply any "official policy or custom" requirement to foreclose a suit for prospective relief against a county or its officials for enforcing allegedly unconstitutional state laws.
 
 
 19
 We reach this conclusion upon review of the policy jutifications supporting the decision in Monell. The Monell Court set forth an "official policy or custom" requirement to limit Sec. 1983 damage awards against municipalities. That limitation served to alleviate the imposition of financial liability on local governments based solely on a respondeat superior theory. Id. at 691, 98 S.Ct. at 2035; see Pembaur v. City of Cincinnati, 475 U.S. 469, 478-80, 106 S.Ct. 1292, 1297-99, 89 L.Ed.2d 452 (1986).[3] As the Court explained:
 
 
 20
 The "official policy" requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible. Monell reasoned that recovery from a municipality is limited to acts that are, properly speaking, acts "of the municipality"--that is, acts which the municipality has officially sanctioned or ordered.
 
 
 21
 Pembaur, 475 U.S. at 479-80, 106 S.Ct. at 1298-99 (emphasis in original).
 
 
 22
 Consistent with this focus on limiting damage awards against municipalities, the Court in post-Monell decisions has considered only the question of when a local government may be liable for money damages. See, e.g., City of St. Louis v. Praprotnik, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); Pembaur v. City of Cincinnati, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); City of Oklahoma City v. Tuttle, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); cf. Jett v. Dallas Indep. School Dist., --- U.S. ----, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989) (holding that the limitation of damages against municipalities under Sec. 1983 applicable to Sec. 1981 claims). Neither Monell nor its progeny expressed a view as to the circumstances under which solely prospective, as opposed to retrospective, relief might be available.
 
 
 23
 Further, Monell involved a constitutional challenge to a statute enacted by the city, which undisputably was an official policy of the defendant municipality. It did not present the Court with the question whether an "official policy or custom" requirement would apply in an action to enjoin the enforcement of allegedly unconstitutional state laws, which by statute are enforced only by local officials.
 
 
 24
 We find no persuasive reasons for applying the Court's "official policy or custom" requirement to suits against counties only for prospective relief.[4] The justification for limiting an action for damages is notably absent when the relief sought is an injunction halting the enforcement of an unconstitutional state statutory scheme. Cf. Hoohuli v. Ariyoshi, 741 F.2d 1169, 1176 (9th Cir.1984) (finding no persuasive justification for immunizing state officials from prospective injunctive relief); see also Wood v. Strickland, 420 U.S. 308, 315 n. 6, 95 S.Ct. 992, 997 n. 6, 43 L.Ed.2d 214 (1975) (recognizing that "immunity from damages does not ordinarily bar equitable relief as well"). The relief sought here, a declaration that the Idaho statutes are unconstitutional and an injunction against their enforcement, do not carry any threat of fiscal liability.
 
 
 25
 We conclude that the Monell doctrine did not intend to limit the reach of plaintiffs seeking prospective relief under Sec. 1983 against the further exercise of governmental authority under an allegedly unconstitutional state statute. The availability of such relief is "necessary to permit the vindication of important federal rights." Cf. Hoohuli, 741 F.2d at 1176. We conclude that the court erred in applying Monell and its progeny to the facts presented here.[5]
 
 II
 
 26
 Finding the court's reliance on Monell misplaced, we must determine whether the county officials, named in their official capacities, were the proper defendants in this case.
 
 
 27
 We consider whether this suit against the named defendants is consistent with Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the seminal decision on suits to restrain the enforcement of allegedly unconstitutional laws. See Finberg v. Sullivan, 634 F.2d 50, 54 (3d Cir.1980) (en banc). In Ex parte Young, the Court held that officials, named as defendants in a suit to enjoin the enforcement of an allegedly unconstitutional law, must by virtue of their offices have some connection with the enforcement of the challenged law. 209 U.S. at 157-61, 28 S.Ct. at 452-54.
 
 
 28
 These appellants sued the sheriffs for actions in attaching and garnishing their bank accounts. Under Idaho's postjudgment garnishment statutes, the sheriffs have the sole duty to enforce those laws. See Idaho Code Secs. 8-507 to 8-523, 11-101 to 11-207 (1979). Their duty is to serve writs of execution and notices of garnishment on garnishees. See id. Sec. 31-2202(8).
 
 
 29
 Because they had the statutory duty to enforce and administer allegedly unconstitutional state statutes, the performance of their duties had the same effect on the appellants' rights that the Court found critical in Ex parte Young.[6] See Finberg, 634 F.2d at 54 (holding that, under Ex parte Young, county officials were properly named as defendants in a suit challenging Pennsylvania's postjudgment garnishment statutes). Their actions caused the constitutional violations complained of. We find that the county sheriffs were properly named as defendants.
 
 
 30
 To the extent that this suit against the sheriffs, in their official capacities, implicates an action against state officials, we find no Eleventh Amendment bar. "[T]he Eleventh Amendment does not bar actions against state officers in their official capacities if the plaintiffs seek only a declaratory judgment or injunctive relief." Jackson v. Hayakawa, 682 F.2d 1344, 1350 (9th Cir.1982); see Ex parte Young, 209 U.S. at 155-56, 28 S.Ct. at 452; Los Angeles Branch NAACP v. Los Angeles Unified School Dist., 714 F.2d 946, 953 (9th Cir.1983), cert. denied, 467 U.S. 1209, 104 S.Ct. 2398, 81 L.Ed.2d 354 (1984); American Civil Liberties Union v. Finch, 638 F.2d 1336, 1341-42 (5th Cir.1981).
 
 
 31
 Further, although the Supreme Court held recently that state or state officials are not considered "persons" under Sec. 1983, this holding does not apply when a state official in his or her official capacity is sued for prospective relief. Will v. Michigan Dep't of State Police, --- U.S. ----, 109 S.Ct. 2304, 2311 n. 10, 105 L.Ed.2d 45 (1989).
 
 
 32
 We conclude that the court erred in granting summary judgment for the appellees. Because the appellants properly proceeded against county sheriffs, in their official capacities, we remand to the district court to decide whether the Idaho postjudgment garnishment procedures are unconstitutional under the due process and supremacy clauses of the Constitution.
 
 III
 
 33
 Appellants contend also that the court abused its discretion by not ruling on their motion for class certification and by not allowing leave to amend their complaint to join other parties. On remand, appellants may renew those motions for the court to reconsider in light of this decision.
 
 
 34
 REVERSED AND REMANDED.
 
 
 
 *
 Of the Central District of California
 
 
 [1]
 Federal law exempts the governmental benefits in their bank accounts from state garnishment proceedings. See 42 U.S.C. Sec. 407(a) (exempting social security benefits from execution, attachment or garnishment); 45 U.S.C. Sec. 231m (exempting railroad retirement benefits from legal process); see also Philpott v. Essex County Welfare Bd., 409 U.S. 413, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973) (holding that the statutory exemption protects benefits held in bank accounts)
 
 
 [2]
 Vaugh Killeen, the present sheriff of Ada County, was substituted for Palmer. See Fed.R.Civ.P. 25(d)
 
 
 [3]
 The Court in Pembaur noted that Monell was "a case about responsibility." 475 U.S. at 478, 106 S.Ct. at 1297
 In the first part of the [Monell ] opinion, we held that local government units could be made liable under Sec. 1983 for deprivations of federal rights, overruling a contrary holding in Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). In the second part of the opinion, we recognized a limitation on this liability and concluded that a municipality cannot be liable by application of the doctrine of respondeat superior.
 Id. (citation omitted).
 
 
 [4]
 The district court's reliance on Familias Unidas v. Briscoe, 619 F.2d 391 (5th Cir.1980), is misplaced. In Briscoe, the Fifth Circuit held that a county could not be held liable for damages under the Monell doctrine for the actions of a Texas county judge in performing a nondiscretionary act pursuant to state law. Id. at 404. The district court here relied incorrectly on Briscoe to hold that county sheriffs should be immune from suit for equitable relief for performing ministerial duties pursuant to state law. Although Briscoe exempted county sheriffs from damages, the court granted declaratory relief to the plaintiffs. Id. at 402-05
 
 
 [5]
 In Finberg v. Sullivan, 634 F.2d 50 (3d Cir.1980) (en banc), the Third Circuit considered a similar issue to that presented to us. The plaintiffs in that case sued county officials whose statutory duties involved enforcing the state's postjudgment garnishment statutes. Id. at 54. The court held that those officials were the proper officials to defend the constitutionality of the state statutes. Neither the majority nor the dissenting opinions refer to Monell or its progeny
 Appellees argue that in Finberg, the plaintiffs sued the county officials in their individual and official capacities. In light of our holding that Monell does not apply to the present case, we find this distinction irrelevant.
 
 
 [6]
 The district court's suggestion that appellants could have sued the Idaho Attorney General is specious because that official has no state constitutional or statutory obligation to administer or enforce the procedure in question. See Idaho Code Sec. 67-1401 (1989); Ex parte Young, 209 U.S. at 157-61, 28 S.Ct. at 452-54; accord Harris v. Bailey, 675 F.2d 614, 617 (4th Cir.1982) (attorney general dismissed properly as a party defendant because requested relief was local in nature and case did not involve an issue of state law interpretation or enforcement)